FILED

2010 Jan-28  AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| THE UNITED STATES<br>OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| James J. Stricker; Daniel R. Benson; | ) | Civil Action No. |
| Kasowitz, Benson, Torres & | ) | CV-09-KOB-2423-E |
| Friedman, LLP; Donald W. Stewart | ) | |
| d/b/a as Donald W. Stewart, PC; | ) | |
| Don Barrett; The Barrett Law Firm, | ) | |
| PA; Charles E. Fell, Jr.; Charles L. | ) | |
| Cunningham, Jr.; Cunningham & | ) | |
| Fell, PLLC; Johnston Druhan, LLP; | ) | |
| Greg Cusimano; Cusimano, Keener, | ) | |
| Roberts & Raley, P.C; The Cody Law | ) | |
| Firm, PC; Monsanto Company; | ) | |
| Solutia, Inc.; Pharmacia Corporation; | ) | |
| Travelers Companies, Inc., d/b/a The | ) | |
| Travelers Indemnity Company; | ) | |
| American International Group, Inc., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM IN SUPPORT OF THE
# UNITED STATES' MOTION FOR
# PARTIAL SUMMARY JUDGMENT
# ON LIABILITY

# TABLE OF CONTENTS

**MEMORANDUM IN SUPPORT OF THE UNITED STATES'
MOTION FOR PARTIAL SUMMARY JUDGMENT** . . . . . . . . . . . . . . . . -1-

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

**STATEMENT OF UNDISPUTED RELEVANT MATERIAL
FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

    A.    Underlying State Court Tort Actions . . . . . . . . . . . . . . . . . . . . . . . -4-

    B.    The <u>Abernathy</u> Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

    C.    Distribution Of The <u>Abernathy</u> Settlement Funds . . . . . . . . . . . . . -8-

    D.    CMS Made Conditional Medicare Payments . . . . . . . . . . . . . . . . . -9-

**LEGAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

    A.    History And Scope Of The MSP Statute And
              Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

          1.    The MSP Statute Made Medicare Secondary
                 To Available Private Primary Plans . . . . . . . . . . . . . . . . . . -10-

          2.    Responsible Primary Plans Must Reimburse
                 Medicare For Its Conditional Payments . . . . . . . . . . . . . . . -12-

          3.    Entities That Receive Payment From A Primary
                 Plan Also Must Reimburse Medicare For Conditional
                 Payments If The Primary Plan Fails To Do So . . . . . . . . . -13-

          4.    The United States Has A Direct Right Of Action
                 To Recover Medicare Conditional Payments From

Primary Plans And Entities That Receive Payment
From A Primary Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

5.    The United States Is Entitled To Recover Interest
And Double Damages Against A Primary Plan . . . . . . . . . -15-

B.    The PSJ Defendants Must Reimburse The Medicare
Trust Fund As Required By Federal Law . . . . . . . . . . . . . . . . . . -15-

1.    <u>Abernathy</u> Plaintiffs Asserted And Released
Medical Claims In The <u>Abernathy</u> Case . . . . . . . . . . . . . . . -15-

2.    Medicare Made Conditional Payments On Behalf
Of Its Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

3.    Monsanto, Solutia, And Pharmacia Are Primary
Plans Which  Are Responsible To Make Payment
Under The MSP Statute  . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

4.    Abernathy Counsel Must Reimburse The Medicare
Trust Fund As Entities/Persons Who Received
Primary Payment Or Proceeds From A
Primary Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

COMES NOW Plaintiff The United States of America (the "United States"), and submits this Memorandum in Support of Its Motion for Partial Summary Judgment On Liability against Defendants James J. Stricker, Daniel R. Benson, the law firm of Kasowitz, Benson, Torres & Friedman, LLP, Donald W. Stewart, Monsanto Company ("Monsanto"), Solutia, Inc. ("Solutia"), and Pharmacia Corporation ("Pharmacia") (collectively "the PSJ Defendants").

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 56(c)(1)(A)[1], the United States is entitled to a legal ruling on liability that, pursuant to the Medicare Secondary Payer ("MSP") Statute, 42 U.S.C. § 1395y(b)(2)(B)[2], the PSJ Defendants were and are obligated to reimburse the Medicare Trust Fund for Medicare's conditional payments for medical care and expenses included in claims released in the 2003 settlement of Abernathy v. Monsanto Company ("Abernathy Settlement")[3], CV-01-832, Circuit

---

[1] Under Fed. R. Civ. P. 56(d)(2), this Court may enter summary judgment on liability alone, "even if there is a genuine issue on the amount of damages." This Court's ruling on liability will frame the issues for discovery in the damages phase.

[2] All relevant code and regulatory provisions are attached in Addendum A.

[3] The Abernathy matter is a consolidated action composed of matters styled Abernathy v. Monsanto Company, CV-96-269, Circuit Court of Calhoun County, Alabama; Abbott v. Monsanto Company, CV-97-967, Circuit Court of Calhoun County, Alabama; Nelson v. Monsanto Company, CV-99-502, Circuit Court of

1

Court of Etowah County, Alabama case.[4]  In support of this motion, we will show:
(1) the underlying plaintiffs (including Medicare beneficiaries) in the <u>Abernathy</u>
case ("<u>Abernathy</u> plaintiffs") asserted and released medical claims in that action;
(2)  Medicare made conditional payments on behalf of Medicare beneficiaries who
were among the plaintiffs; (3) Monsanto, Solutia, and Pharmacia paid $300 million
to settle all claims in the <u>Abernathy</u> case and are, therefore, responsible primary
plans under the MSP Statute and required to reimburse Medicare for its conditional
payments; and (4) James L. Stricker, Daniel Benson, the law firm of Kasowitz,
Benson, Torres & Friedman, and Donald Stewart ("<u>Abernathy</u> counsel"), received
$129 million as part of the <u>Abernathy</u> settlement and are, therefore, liable as
entities that received payment from a primary plan, and are also required to
reimburse Medicare for its conditional payments.

---

Calhoun County, Alabama; <u>Long v. Monsanto Company</u>, CV-96-268, Circuit
Court for Calhoun County, Alabama; <u>Margie Suggs v. Monsanto Company</u>, CV-
01-0874, Circuit Court of Calhoun County, Alabama, and <u>Brown v. Monsanto
Company</u>, CIV 97-ETC-1618-E (N.D. Ala.).

[4] The undisputed facts support a ruling on liability as to the PSJ Defendants.
We do not have undisputed facts, without discovery, that the other Defendant law
firms received proceeds from the <u>Abernathy</u> Settlement; nor do we have policy-
specific information concerning the insurance company defendants who, upon
information and belief, paid Monsanto for a part of the <u>Abernathy</u> Settlement.
However, a ruling against the PSJ Defendants at this early phase could provide a
framework for settlement discussions among all parties.  The damages issues could
be contentious, and a ruling on liability will help focus that phase as well.

## STATEMENT OF UNDISPUTED RELEVANT MATERIAL FACTS

**A.     Underlying State Court Tort Actions**

1.  The <u>Abernathy</u> plaintiffs sought damages from Monsanto, Solutia, and/or Pharmacia for harm allegedly suffered from the exposure, since the 1930's, to polychlorinated biphenenyls ("PCBs") emitted from a chemical plant in Anniston (Calhoun County), Alabama.  Exh. A at 16; Exh. B at 3.  They sought damages for "human health problems ranging from irritation of the eyes to cancer."  <u>Id</u>.

2.  The consolidated <u>Abernathy</u> case adopted and realleged each and every allegation in the underlying complaints.  Exh. B at 1-2.

3.  The <u>Abernathy</u> plaintiffs further alleged that PCBs are highly stable chemicals which remain unchanged in living tissue until that tissue is dead.  Exh. A at 17; Exh. B at 5; Exh. C at 4.

4.   The complaints assert:

> As a result of the exposure plaintiffs have received from the toxic substances released from Monsanto, plaintiffs have been exposed to an increased risk of adverse health effects in the future which will necessitate substantial medical monitoring to ensure the earliest possible diagnosis and treatment of adverse health conditions caused by exposure.
> * * *
> WHEREFORE . . . the plaintiffs claim . . . the costs of medical testing, monitoring, treatment and prevention that will be required in the future, and other

3

compensatory damages, . . . .

Exh. B at 8-9.

5.  According to the <u>Abernathy</u> plaintiffs, the release of PCBs into

"plaintiffs' bodies . . . proximately caus[ed] injury and damage to plaintiffs."  Exh.

D at 3.

**B.    The <u>Abernathy</u> Settlement**

6.  On September 9, 2003, <u>Abernathy</u> counsel and counsel for Monsanto,

Solutia, and Pharmacia entered into an agreement ("Settlement Agreement") in the

consolidated <u>Abernathy</u> matter.  Exh. E.

7.   Monsanto, Solutia, and Pharmacia, jointly and severally, agreed to pay

$300 million in settlement, upon the satisfaction of certain conditions.  Exh. E at 2.

8.  The Settlement Agreement provides for payment of the claims of the

<u>Abernathy</u> plaintiffs as follows:

> 3.d.   ii.   The [$45,000,000], plus any interest . . .
> shall be paid from the Escrow Account to
> pay the claims of each settling plaintiff.
> * * *
> f.   ii.   The [$90,000,000], plus any interest  . . .
> shall be used for the payment of monies for
> the benefit of plaintiff property owners
> and/or plaintiff residents [at plaintiffs'
> counsel discretion].
> * * *
> g.   ii.   [$21,000,000], plus any interest . . . shall be
> used by the . . . trust     . . . for the following

4

general purposes, and the [trust] will have
the authority to expend funds for such
purposes, but will not be required to perform
every such purpose:

(1)　To provide primary health care and/or to
assist in gaining access to primary health
care and other health care services
(including but not limited to lab, dental,
outreach, prenatal care, radiology, case
management, pharmacy, preventive
medicine, holistic medicine and other health
care programs) by making grants or
payments for the actual benefit of persons
meeting the criteria of the [trust].

* * *

h.　ii.　[$1,500,000] shall be paid [annually 2004
through 2013] to the [trust] for the purposes
outlined in paragraph 3.g. hereof.

Exh. E at 7-11.

9.  As part of the settlement, the <u>Abernathy</u> plaintiffs agreed to release their

PCB-related claims.  <u>Exh</u>. E at 4.   The Settlement Agreement provided that each

<u>Abernathy</u> plaintiff sign a release that releases and forever discharges Monsanto,

Solutia and Pharmacia for

any and all legal or equitable claims, whether currently
known or unknown, which I now have or may have in the
future arising from or related to contamination of
property or person from, or exposure of property or
person to, PCBs manufactured, used or handled at the
Anniston Plant or disposed of or released by or at the
Anniston Plant, or emanating from the Anniston Plant or
other property on which PCBs that relate to the

5

> operations or activities of the Anniston Plant are present, and without in any way limiting the generality or being bound by the particularity of the foregoing, any claims that were or could have been asserted by me in the actions included in the consolidated action in the Circuit Court of Etowah County, Alabama styled <u>Abernathy, et al. v. Monsanto Company, et al.</u>, Civil Action No. CV-01-832 . . . .

Exh. F at 1-2.

10.  The settlement was conditioned on several factors, including certification by <u>Abernathy</u> counsel that they had secured signed releases from 97% of the <u>Abernathy</u> plaintiffs.  Exh. E at 13.

11.  <u>Abernathy</u> counsel certified to the court on December 2, 2003, that they had obtained court approval of the settlements of plaintiffs who were minors and that they had obtained releases from 97% of the <u>Abernathy</u> plaintiffs.  Exh. G.

12.  <u>Abernathy</u> counsel were required under the Settlement Agreement to make the signed releases available to Monsanto, Solutia, and Pharmacia for a three-day verification period.  Exh. E at 6.  Only at the end of this verification period, and only when the distribution of funds then began, were the releases enforceable:  "The Releases and the Court approval of the settlement of the claims of minors shall not be enforceable until such distribution of funds commences."  Exh. E at 6.

## C.    Distribution Of The <u>Abernathy</u> Settlement Funds

13.  Of the $300 million, <u>Abernathy</u> counsel received $129 million in fees and costs pursuant to the Settlement Agreement.  Exh. E at 6-11.

14.  Daniel Benson of Kasowitz, Benson, Torres & Friedman, and Donald Stewart are listed as <u>Abernathy</u> plaintiffs' counsel in the <u>Abernathy</u> Settlement Agreement.  Exh. E at 19.

15.  Last year, Mr. James Stricker (of Kasowitz, Benson, Torres & Friedman) provided counsel for the Department of Health and Human Services ("HHS") and counsel for the United States with a spreadsheet of individuals whom he identified as Medicare beneficiaries among the settling <u>Abernathy</u> plaintiffs ("Beneficiary Spreadsheet"[5]).  Exh. H.   The Beneficiary Spreadsheet provides information about 907 beneficiaries, as identified by <u>Abernathy</u> counsel, and the amounts each received in the <u>Abernathy</u> settlement.  Exh. H.

**D.     CMS Made Conditional Medicare Payments**

16.  CMS has substantially completed a search of its official records for all conditional payments made on behalf of the 907 Medicare beneficiaries identified

---

[5] The United States has redacted the Beneficiary Spreadsheet to eliminate identifying information of the Medicare beneficiaries.  Note also that several names were repeated, so although the Beneficiary Spreadsheet contains 915 line items, in fact are only 907 unique line items.

by <u>Abernathy</u> counsel.  Exh. I.  This search captured all conditional payments paid

by Medicare on behalf of these beneficiaries from 1991 to November 30, 2009.  <u>Id</u>.

 These conditional payments total $67,156,770.01.  <u>Id</u>.

## LEGAL ARGUMENT

The MSP Statute requires that primary plans and entities that receive

payment from those plans *shall* reimburse the Medicare Trust Funds for

Medicare's conditional payments made on behalf of its beneficiaries.  As discussed

in greater detail below, the application of this straightforward statutory mandate to

the undisputed facts of this case leads to one conclusion:  Monsanto, Pharmacia,

and Solutia—as primary plans that paid $300 million pursuant to the Settlement

Agreement—and James J. Stricker, Daniel R. Benson, the law firm of Kasowitz,

Benson, Torres & Friedman, and Donald W. Stewart—as attorneys that received

$129 million from a primary plan—are each liable to the United States for the

conditional payments related to claims released in the <u>Abernathy</u> settlement.


**A.  History And Scope Of The MSP Statute And Regulations**

**1.      The MSP Statute Made Medicare Secondary To Available Private
         Primary Plans**

Under the Medicare law as enacted in 1965, Medicare was the primary payer

for all Medicare-eligible persons, and as such, paid primary benefits on behalf of

its beneficiaries for necessary medical items or services except those covered by workers' compensation.  Beginning in 1980, Congress enacted a series of laws known collectively as the MSP Statute, 42 U.S.C. § 1395y(b)(2), which made Medicare the secondary payer to certain other primary plans specifically to shift costs from Medicare to private sources of payment.  Health Ins. Ass'n of America, Inc. v. Shalala, 23 F.3d 412, 414 (D.C. Cir. 1994); see also United States v. Baxter Int'l, Inc., 345 F.3d 866, 874 (11th Cir. 2003) ("The MSP Statute sought to curb skyrocketing health-care costs and to preserve the Medicare system's fiscal integrity."); Zinman v. Shalala, 67 F.3d 841, 845 (9th Cir. 1995) ("The transformation of Medicare from the primary payer to the secondary payer with a right of reimbursement reflects the overarching statutory purpose of reducing Medicare costs."); H.R. Rep. No. 96-1167, at 352 (1980), reprinted in 1980 U.S.C.C.A.N. 5526, 5717.

Accordingly, Medicare may not make payment if  "payment has been made or can reasonably be expected to be made . . . under a . . . liability insurance policy or plan (including a self-insured plan). . . ."  42 U.S.C. § 1395y(b)(2)(A)(ii).  This prohibition "is intended to keep the government from paying a medical bill where it is clear an insurance company will pay instead" within a reasonable time.

Evanston Hosp. v. Hauck, 1 F.3d 540, 544 (7th Cir. 1993).

In many situations, neither the provider (e.g., hospital or doctor) nor the beneficiary knows whether or not a primary plan will eventually pay for a Medicare beneficiary's medical costs.  "In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered services, even when another source may be obligated to pay, if that other source is not expected to pay promptly."  Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 777 (11th Cir. 2002) ("The way the system is set up the beneficiary gets the health care she needs, but Medicare is entitled to reimbursement if and when the primary payer pays her.").  The MSP Statute specifically provides that, if a primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly," Medicare pays for those medical expenses, but those payments are conditioned on reimbursement if it is demonstrated that a primary plan had responsibility to pay for those medical expenses.  42 U.S.C.      § 1395y(b)(2)(B); 42 C.F.R. § 411.24.

**2.     Responsible Primary Plans Must Reimburse Medicare For Its Conditional Payments**

All Medicare payments are conditioned on reimbursement if it is demonstrated that a primary plan had responsibility to pay for those medical expenses.  42 U.S.C. § 1395y(b)(2)(B); 42 C.F.R. § 411.24.  Although that

10

obligation has existed since 1980, Congress clarified its intent of shifting the

burden to private parties with its amendments to the MSP Statute in 2003, which

define "primary plan" to include a plan of self-insurance, specifying that "[a]n

entity that is engaged in a business, trade, or profession shall be deemed to have a

self-insured plan if it carries its own risk (whether by a failure to obtain insurance,

or otherwise), in whole or in part."  42 U.S.C. § 1395y(b)(2)(A)(ii); see also 42

C.F.R. § 411.50(b).

The primary plan's responsibility to make primary payment may be

demonstrated by "a payment conditioned on the recipient's . . . release (whether or

not there is a determination or admission of liability) of payment."  42 U.S.C.

§ 1395y(b)(2)(A)(ii).


**3.     Entities That Receive Payment From A Primary Plan Also Must Reimburse Medicare for Conditional Payments If the Primary Plan Fails To Do So**

In addition to imposing liability on those that make payment under a primary

plan, the MSP Statute extends liability to those that <u>receive</u> payments, or proceeds

of payments, as well.  Specifically, Congress also provided that any "entity that

receives payment from a primary plan" must reimburse Medicare whenever the

primary plan "has or had a responsibility to make payment."  42 U.S.C.

§ 1395y(b)(2)(B)(ii); see also H.R. Rep. No. 108-178(II), at 189 ("The Secretary's

authority to recover payment from any and all responsible entities . . . would be

clarified.").  Applicable federal regulations expressly identify attorneys as parties

from which the United States may recover primary payments.  42 C.F.R. §

411.24(g).

> **4.     The United States Has A Direct Right Of Action To Recover Medicare Conditional Payments From Primary Plans And Entities That Receive Payment From A Primary Plan**

The United States has a direct right of action to recover conditional

Medicare payments with respect to an item or service, against "any or all entities

that are or were required or responsible . . . to make payment with respect to the

same item or service (or any portion thereof) under a primary plan."  42 U.S.C.

§ 1395y(b)(2)(B)(iii).  The Eleventh Circuit declared in Baxter International that

"[c]ourts have uniformly concluded that a settlement agreement that includes a

non-itemized element of compensation for a plaintiff's medical care is 'for'

medical expenses, even if the exact share or amount is indeterminate."  345 F.3d at

899 n.27; see also Mathis v. Leavitt, 554 F.3d 731, 733 (8th Cir. 2009) (Medicare

is entitled to reimbursement so long as "the settlement, which settled all claims

brought, necessarily resolved the claim for medical expenses") .

Similarly, the United States has a direct right of action against "any entity that has received payment  from a primary plan or from the proceeds of a primary plan's payment to any entity. . . ." 42 U.S.C. § 1395y(b)(2)(B)(iii).

Both the primary payer and an entity that receives payment (including an attorney) under a primary plan must reimburse the United States within 60 days. 42 C.F.R. § 411.24 (g) & (h); <u>see</u> <u>also</u>  42 U.S.C. § 1395y(b)(2)(B)(iii).  If the United States does not receive such reimbursement, the primary payer is required to reimburse the United States even if it has already paid a Medicare beneficiary or other party.  42 C.F.R. § 411.24(i)(1); <u>Health Ins. Ass'n of America</u>, 23 F.3d at 417-18 (upholding 42 C.F.R. § 411.24(i)), <u>cited with approval in</u> <u>Baxter Int'l</u>, 345 F.3d at 900-01 & n.30.  This same rule applies where  the primary payer makes its payment to an entity other than the United States in instances in which "it is, or

should be, aware" that conditional Medicare payments have been made.  42 C.F.R.

§ 411.24(i)(2).

### 5. The United States Is Entitled To Recover Interest And Double Damages Against A Primary Plan

The United States may collect interest and double damages from any

primary plan that fails to provide for primary payment or appropriate

reimbursement of conditional Medicare payments.  42 U.S.C.

§§ 1395y(b)(2)(B)(ii) and (iii); 42 C.F.R. § 411.24(c)(2).

## B. The PSJ Defendants Must Reimburse The Medicare Trust Fund As Required By Federal Law

The undisputed material facts establish the PSJ Defendants' liability to

reimburse Medicare under the MSP Statute for the amount of Medicare's

conditional payments for items and services related to claims released in the

Abernathy case.

### 1. The Abernathy Plaintiffs Asserted And Released Medical Claims In the Abernathy Case

As set forth in our Introduction, supra at 2-3, the first element in establishing

liability under the MSP Statute is the assertion and release of medical claims by

Medicare beneficiaries in an underlying action.  As set forth in the Statement of

Undisputed Relevant Material Facts ("SOF"), Abernathy counsel identified 907

Medicare beneficiaries among the settling Abernathy plaintiffs. SOF at ¶ 15; Exh.

14

H.  The <u>Abernathy</u> plaintiffs, including Medicare beneficiaries, asserted a myriad of claims for medical conditions, illnesses, and injuries resulting from, and/or to be incurred in the future from, the exposure of their bodies to PCBs.  As described in the state court complaints and the consolidated action, which incorporated the allegations asserted in the underlying complaints, the medical expenses for which they brought suit included expenses for "problems ranging from irritation of the eyes to cancer" and "costs of medical testing, monitoring, treatment and prevention that will be required in the future."  SOF at ¶¶ 1, 4.

The <u>Abernathy</u> plaintiffs released all medical claims, both present and future, as part of the <u>Abernathy</u> Settlement.  SOF at ¶ 9.  Indeed, the terms of the <u>Abernathy</u> Settlement specifically provide for the reimbursement of claims, including medical claims in paragraph 3.  SOF at ¶ 8.  The <u>Abernathy</u> settlement includes payment for "claims of each settling plaintiff," SOF at ¶ 8, and the provision of "primary health care," including "lab, dental, outreach, prenatal care, radiology, case management, pharmacy, preventive medicine, holistic medicine and other health care programs."  SOF at ¶ 8.


### 2.   Medicare Made Conditional Payments On Behalf Of Its Beneficiaries

The second element in establishing liability under the MSP Statute is to

15

show that Medicare made conditional payments related to claims asserted and

released in the <u>Abernathy</u> action.  The Affidavit of Betty Noble, a CMS employee,

establishes that CMS made conditional payments on behalf of the identified

Medicare beneficiaries in the amount of $67,156,770.01[6] between January 1991

through November 30, 2009.  SOF ¶ 16.  Those Medicare payments are conditional

to the extent that a private primary plan is "responsible to pay."  <u>See</u>, <u>e.g.</u>, <u>Baxter</u>

<u>Int'l</u>, 345 F.3d at 886 (holding that, under the MSP Statute, "<u>any</u> payment that

Medicare does make is secondary and is subject to reimbursement from sources of

primary coverage under the statute") (emphasis added).  In this case, the <u>Abernathy</u>

plaintiffs released all claims asserted in the complaints that were consolidated in

the Abernathy action.  SOF at ¶ 9.  Given the breadth of the claims made and

released in the <u>Abernathy</u> case, there is no doubt that CMS made conditional

payments for which it has been demonstrated, by the <u>Abernathy</u> Settlement, that

Monsanto, Solutia, and Pharmacia were required or responsible to pay.  <u>Mathis v.</u>

<u>Leavitt</u>, 554 F.3d at 733 (Medicare is entitled to reimbursement so long as "the

settlement, which settled all claims brought, necessarily resolved the claim for

medical expenses") .

_____

[6]  The total amount of conditional payments reflected in CMS's data run is not asserted herein as proof of the amount of conditional payments, but rather to show that Medicare made conditional payments.  The amount of Medicare's conditional payments, which must be reimbursed, will be determined in the damages phase.

16

### 3.   Monsanto, Solutia, and Pharmacia Are Primary Plans Which Are Responsible To Make Payment Under the MSP Statute

The third element in establishing MSP liability is to show that Monsanto, Solutia and Pharmacia are responsible primary plans under the MSP Statute. The Abernathy settlement established this element. First, Monsanto, Solutia, and Pharmacia were "primary plans" as "entit[ies] that engage[d] in a business, trade, or profession . . . and carrie[d] their own risk . . . in whole or in part," 42 U.S.C. § 1395y(b)(2)(B)(ii), by virtue of their payment of $300 million under the Settlement agreement. Second, they were and are "required or responsible" to make primary payment for the Medicare beneficiaries' medical claims when they paid $300 million conditioned on a release of medical claims. Id. Thus, in December 2003, the certification of 97% of signed releases by minor and adult plaintiffs triggered both (a) the distribution of funds under the Settlement Agreement and the enforceability of the releases, and (b) the PSJ Defendants' responsibility to pay under the MSP Statute, because at that time "a payment [was made] conditioned upon the recipient's compromise, waiver or release. . . ." Id.

The MSP Statute states that a primary plan ". . . shall reimburse the appropriate Trust Fund" once its responsibility is demonstrated under the statute. Id. Monsanto, Solutia, and Pharmacia are liable to make payment to the Medicare Trust Fund in this case even though they have already paid $300 million. The

17

regulations clearly state that "in the case of liability insurance settlements . . . if Medicare is not reimbursed [within 60 days by the persons/entities receiving payment], the primary payer must reimburse Medicare even though it has reimbursed the beneficiary or other party."  42 C.F.R. § 24(h) and (i)(1).

Monsanto, Solutia, and Pharmacia have failed to reimburse the Medicare Trust Fund.  As a result, they are liable, not only to reimburse Medicare for its conditional payments, but also for interest and double damages.  42 U.S.C. §§ 1395y(b)(2)(B)(ii) and (iii); 42 C.F.R. § 411.24(c)(2).

**4.**    **<u>Abernathy</u> Counsel Must Reimburse The Medicare Trust Fund As Entities/Persons Who Received Primary Payment or Proceeds From A Primary Payment.**

Because <u>Abernathy</u> counsel received primary payment or proceeds from a primary payment, the United States is also entitled to partial summary judgment against them.  <u>Abernathy</u> counsel received $129 million in the <u>Abernathy</u> settlement.  SOF ¶ 13.  Donald Stewart and the Kasowitz, Benson, Torres & Friedman law firm, with which both James L. Stricker and Daniel Benson are associated, represented the <u>Abernathy</u> plaintiffs through the implementation of the <u>Abernathy</u> settlement. They acted as counsel for the <u>Abernathy</u> plaintiffs in connection with the Settlement Agreement. SOF at ¶ 14. Their affirmative duty to reimburse Medicare parallels that of Monsanto, Solutia and Pharmacia:  "A primary

plan, *and an entity that receives payment from a primary plan*, shall reimburse the appropriate Trust Fund. . . ." 42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added). Thus, the fact that Monsanto, Solutia and Pharmacia paid <u>Abernathy</u> counsel instead of Medicare renders <u>Abernathy</u> counsel liable to reimburse Medicare for its conditional payments.  Entities who receive payment, or proceeds from a payment, must reimburse Medicare for its conditional payments within 60 days.  42 C.F.R. § 411.24(h).  Applicable federal regulations expressly identify attorneys as parties from which the United States may recover primary payments.  42 C.F.R. § 411.24(g).  Case law similarly recognizes this liability.  <u>See</u>, <u>e.g.</u>, <u>United States v. Weinberg</u>, No. Civ. A. 01-CV-0679, 2002 WL 32356399 (E.D. Pa. July 1, 2002);<u>Denekas v. Shalala</u>[7], 943 F. Supp. 1073, 1080 (S.D. Iowa 1996); <u>United States v. Sosnowski</u>, 822 F. Supp. 570, 573 (W.D. Wis 1993).

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court enter partial summary judgment on liability against Defendants James J.Stricker, Daniel R. Benson, the law firm of Kasowitz, Benson, Torres &Friedman,

---

[7]"In any event, Medicare has some arrows in its quiver. . . . It can also pursue third parties, including attorneys, who receive payments of any sums which should be reimbursed to Medicare, a fact that would cause any prudent personal injury attorney to involve Medicare before any disbursement of settlement proceeds is made.  42 U.S.C. § 1395y(b)(2)(B)(ii)." <u>Denekas</u>, 943 F. Supp. at 1080.

19

LLP, Donald W. Stewart, Monsanto, Solutia, and Pharmacia.

Dated: January 28, 2009

TONY WEST
Assistant Attorney General

JOYCE WHITE VANCE
United States Attorney

RICHARD E. O'NEAL
Assistant United States Attorney

  s/ Cathy J. Burdette
J. CHRISTOPHER KOHN
(D.C. Bar No. 212357)
RUTH A. HARVEY
(D.C. Bar No. 409138)
CATHY J. BURDETTE
(D.C. Bar No. 386790)
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-2316
Facsimile:   (202) 514-9163

ATTORNEYS FOR THE
UNITED STATES