UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> JAMES J. STRICKER, *et al.*, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. <br> 1:09-cv-02423-KOB |

## MEMORANDUM IN SUPPORT OF
## CERTAIN DEFENDANTS' MOTION TO DISMISS

Defendants James J. Stricker, Daniel R. Benson, Donald W. Stewart, and Kasowitz, Benson, Torres and Friedman LLP (the "Moving Defendants"), respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint.

### PRELIMINARY STATEMENT

In this action, the federal government seeks reimbursement of unspecified Medicare payments that it purportedly made on behalf of unspecified beneficiaries for unspecified medical conditions over an unspecified period of time. In its complaint ("Cmplt."), the government alleges that this "controversy arises from a $300 million settlement" of an action entitled *Abernathy, et al. v. Monsanto Co., et al.,* Civ. Action No. CV-01-832 (Cir. Ct. Etowah Co. Ala.) ("*Abernathy*").

(Cmplt.¶ 20.) The *Abernathy* action was filed in 1996—more than thirteen years before the government filed this action—on behalf of approximately 3,500 individuals, seeking to recover for the plaintiffs' property damage, mental anguish, and personal injury resulting from the defendants' contamination of the Anniston, Alabama area with polychlorinated biphenyls ("PCBs"). In addition to suing Monsanto Company, Solutia, Inc., Pharmacia Corporation and their insurers Travelers Companies, Inc. and American International Group, Inc. (the "Monsanto Defendants"), who caused the Anniston contamination, the federal government in this action also has sued the Moving Defendants and others who the government alleges represented the *Abernathy* plaintiffs and received legal fees for their multi-year representation of their clients—resulting in the settlement agreement which was reached in August 2003.

Despite extensive efforts by the Moving Defendants to work with the government to resolve any legitimate claim for Medicare reimbursement, the government ignored its numerous promises and failed to identify even a single Medicare beneficiary on whose behalf Medicare benefits were paid for any condition that was released as part of the *Abernathy* settlement. While the government alleges in its Complaint "upon information and belief" that the *Abernathy* plaintiffs include "approximately 907 Medicare beneficiaries" (Cmplt.¶ 21), it has not identified a single such Medicare beneficiary by name who

supposedly received Medicare benefits for any medical condition caused by the PCB contamination at issue in the *Abernathy* action—much less the date and amount of any such payment.[1]

Even assuming *arguendo* that the government paid Medicare benefits for some *Abernathy* plaintiff for a medical condition that was released as part of the *Abernathy* settlement, any claim by the government to recover those payments is time barred in this action filed more than thirteen years after the *Abernathy* action was commenced, and more than six years after it was settled. It is well-established that Medicare reimbursement claims by the government under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2) (the "MSP") are governed by, at the longest, a six-year statute of limitations. It is also well-established that the six-year statute of limitations commences running upon the date health care services were provided to the beneficiary. Thus, any claim by the government for reimbursement of any monies paid for medical services provided prior to December 2, 2003—six years before this action was commenced—are time barred.

Moreover, any claim for reimbursement of Medicare expenses paid for services provided after December 2, 2003 must also be dismissed because the

---

[1] Obviously, the mere fact that an *Abernathy* plaintiff may have received Medicare benefits does not mean that the government has a valid reimbursement claim against any of the parties here. For example, the government has no valid reimbursement claim against any of the defendants in this action for payments it may have made on behalf of an *Abernathy* plaintiff for medical services provided as a result of an automobile accident.

federal government does not have any reimbursement claim against these defendants for payments made after the *Abernathy* action was settled.[2] The MSP only provides the federal government with a right to reimbursement if at the time the medical service was provided, a third-party, *e.g.,* a tortfeasor, was obligated to pay for those same medical services. Once the parties settled the *Abernathy* action, the tortfeasors (*i.e.,* the Monsanto Defendants) were no longer obligated to pay for any medical services provided to the *Abernathy* plaintiffs, because any such obligation had been released. Thus, the federal government has no right to reimbursement from the Monsanto Defendants for such post-settlement payments, nor does it have any claim against the Moving Defendants for receiving any proceeds from the Monsanto Defendants. To hold otherwise would mean that no tort claim could ever be settled, because it would allow the federal government to pursue a tortfeasor (and/or the injured party's attorney) twenty or thirty years after the tort claim was settled, simply because the injured party subsequently received Medicare payments for continuing treatment of the injuries. That simply is not the law. Accordingly, any claim by the government for reimbursement of Medicare payments made within the six-year period prior to the filing of this action must also be dismissed because at the time any such payment was made, there was no

---

[2] The Complaint is silent as to whether the government is even asserting any reimbursement claim for Medicare payments of medical services provided after the *Abernathy* action was settled.

third-party responsible for such payments, and thus the government had no right of reimbursement

Furthermore, while the law is clear that the six-year statute of limitations runs from the date the medical services were provided, the federal government in other actions has argued that for claims against attorneys who receive proceeds from the primary payer as part of a settlement, the statute of limitations somehow restarts upon the lawyer's receipt of the proceeds of the settlement. While the government's argument is baseless, in any event, it is undisputed that the $275 million initial payment to settle the *Abernathy* action was transferred to plaintiffs' counsel's escrow account on October 29, 2003. Given that the government did not commence this action until December 2, 2009, any claim by the government to any portion of the initial $275 million is time barred.

Finally, as a separate and independent basis for dismissal, the government's complaint fails to comply with Fed. R. Civ. P. 8 because the government has not alleged the identity of the Medicare beneficiaries for whom it supposedly paid monies, when those payments were made, the amount of such payments, or that those payments were for services caused by the actions of the Monsanto Defendants at issue in the *Abernathy* action. Despite the Moving Defendants' repeated pre-complaint efforts to obtain this information, the government continues to be unable to identify even a single Medicare claimant for whom it paid any

monies for any condition allegedly caused by the Monsanto Defendants' PCB contamination of Anniston, Alabama, or the amount of any such payment. Absent such basic and critical information, the government's Complaint must be dismissed for failure to state a claim.

## STATEMENT OF FACTS

1. The government alleges that the Moving Defendants, as well as several other attorneys, represented the plaintiffs in the consolidated action, *Abernathy, et al. v. Monsanto Co., et al.,* Civ. Action No. CV-01-832 (Cir. Ct. Etowah Co. Ala.). (Cmplt.¶¶ 6-17.) The government further alleges that the *Abernathy* action asserted claims against Monsanto Company, Pharmacia Corporation and Solutia, Inc., and "upon information and belief" that the *Abernathy* plaintiffs "sought compensation for, *inter alia,* medical expenses," as well as property damage and relocation expenses. (*Id.* ¶¶ 23 and Exh. 1 ¶ 3(f).)

2. The government alleges that in August 2003, the *Abernathy* action was settled for $300 million, with various amounts allocated to different groups of *Abernathy* plaintiffs. (*Id.* ¶ 20 and Exh. 1.)

3. The *Abernathy* settlement agreement attached as Exhibit 1 to the Complaint reflects that the settling defendants were obligated to deposit $75 million in the Court's trust account by August 26, 2003, an additional $200 million by the seventh day following the execution and filing of the Settlement Agreement

with the Court (*i.e.,* September 16, 2003), and pay $2.5 million to a trust established for the benefit of plaintiffs on August 26, 2004 through August 26, 2013. (*Id.*, Exh. 1, ¶ 1.)

4. The settlement agreement further provides that "[w]hen plaintiffs' counsel have obtained signed Releases from at least 75% of the adult plaintiffs, plaintiffs' counsel shall so certify to the Court and Interested Parties" and "[i]mmediately upon such certification, all funds in the Settlement Account . . . shall be wire transferred to an interest bearing plaintiffs' attorneys' escrow account . . designated by plaintiffs' counsel and approved by the Court." (*Id.* ¶ 3(c).) That certification was filed with the Court on October 28, 2003. (Exhibit A hereto.)[3]

5. The government also alleges that distribution of settlement monies to the *Abernathy* plaintiffs "was contingent upon certification to the court that 97% of the *Abernathy* Plaintiffs had signed releases" which was filed "with the court on December 2, 2003." (Cmplt.¶ 22, Exh. 2.)

6. While it does not identify a single individual by name, the government alleges "upon information and belief" that "approximately 907 Medicare beneficiaries" received payments from the settlement of the *Abernathy* action. (*Id.*

---

[3] The Court can consider the certification filed with the court as an indisputably authentic document, without converting this motion into one for summary judgment. *See, e.g., Parker v. Potter,* 232 Fed. Appx. 861 (11th Cir. 2007). *See also Fetterhoff v. Liberty Life Assur. Co.*, 282 Fed. Appx. 740, 743 (11th Cir. 2008); *Sosa v. James*, 218 Fed. Appx. 976 (11th Cir. 2007).

¶ 21.) Similarly, while it does not identify a single payment on behalf of any Medicare beneficiary for any medical condition caused by exposure to PCBs that was released by the settlement of the *Abernathy* action, the government alleges in conclusory fashion that it supposedly "made conditional payments, on behalf of its Medicare beneficiaries, for illnesses and injuries released in the *Abernathy* Settlement." (*Id.* ¶ 31.)

## ARGUMENT

### I.

### THE GOVERNMENT'S CLAIMS AGAINST THE MOVING DEFENDANTS ARE BARRED BY THE STATUTE OF LIMITATIONS

The government's claims against the Moving Defendants are barred by the statute of limitations. The longest statute of limitations period applicable to the government's MSP reimbursement claim is six years from the date that the health care services at issue were provided. Thus, any claim for reimbursement of a Medicare payment for health care services provided prior to December 2, 2003 is time barred. With respect to any Medicare payment for services after December 2, 2003, the government has no claim for reimbursement under the MSP from any of the defendants in this action, because after the settlement, any obligation of the Monsanto Defendants to pay any such expenses had been released. Finally, even if the government reasserts its specious argument that the statute of limitations is

somehow "restarted" when an attorney receives settlement proceeds from a responsible party, any claim against the $275 million settlement payment in *Abernathy* received in plaintiffs' counsel's escrow account in October 2003 is time barred, because the government waited to commence this action until December 2, 2009. Accordingly, the government's claims against the Moving Defendants must be dismissed.

### A. Reimbursement Claims For Medicare Payments Made For Services Provided Prior To December 2, 2003 Are Time Barred

While the MSP does not expressly establish a statute of limitations, the Eleventh Circuit has determined that a six-year statute applies to reimbursement claims by the government. *See Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380 (11th Cir. 1997) (recognizing six-year statute of limitations applicable to MSP claims by government); *see also Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 398 (2d Cir. 2001) ("The six-year statute of limitations applicable to FCA claims applies to private actions brought under the MSP").

The Eleventh Circuit also has determined that the statute of limitations under the MSP commences upon the date the health care services were provided. As the Court stated:

> For purposes of the MSP statute, we believe the statute of limitations on the Plaintiffs' claims begins to run on the date the health care services were provided. Once

> services have been rendered, the primary insurer is liable to pay its portion of that claim. Therefore, the Plaintiffs would be entitled to pursue payment by way of the MSP statute as of that date.

*Brooks*, 116 F.3d at 1380; *see also Manning*, 254 F.3d at 398 (measuring statute of limitations from date "medical expenses incurred").

Accordingly, given that the government did not file this action until December 2, 2009, all reimbursement claims for Medicare payments for health care services that were provided prior to December 2, 2003 are time barred.

**B.  The Government Does Not Have Any Claim For Reimbursement Of Medicare Expenses Paid For Medical Services Provided After December 2, 2003, *i.e.*, After The Settlement Of The *Abernathy* Action**

While the government has not alleged in its Complaint that it is seeking reimbursement of any expenses paid for medical services provided after December 2, 2003, to the extent that it is pursuing any such claim, it must be dismissed. Pursuant to the MSP, Medicare is the secondary payer for medical services provided to Medicare beneficiaries only "whenever payment is available from another primary payer," which includes "someone liable to the beneficiary," *i.e.,* a tortfeasor. 42 U.S.C. § 1395y(2)(B)(iii). However, in order for the government to have any reimbursement claim, it is an essential requirement that another person, *e.g.,* a tortfeasor, must be obligated to pay for the medical service at the time those services are provided. *In re Silicone Gel Breast Implants Products Liability Litig.*,

174 F. Supp. 2d 1242, 1251 (N.D. Ala. 2001) ("an essential element of the government's MSP direct action against a primary payer is the proof that the primary payer is 'required or responsible' to pay for 'items or services' provided to a Medicare beneficiary"), *rev'd on other grounds, United States v. Baxter International, Inc.*, 345 F.3d 866, 882 (11th Cir. 2003).

Neither the MSP nor any other statute or rule allows the government to demand reimbursement from anyone for Medicare payments made for medical services for which no third party was obligated to pay at the time the medical services were provided. With respect to the tortfeasor situation applicable here, after a Medicare beneficiary settles his or her claim against the tortfeasor, the tortfeasor is no longer liable or "obligated to pay" for subsequent medical services to that injured party. Accordingly, a Medicare payment by the government after the settlement of the claims against the tortfeasor is not "conditional" or subject to any right of reimbursement.

For example, assume a person is injured in an automobile accident and settles an action against the responsible driver for back injuries incurred as a result of the accident. If the injured party subsequently requires additional medical services as a result of that back injury, and Medicare pays the related medical expenses, the government cannot void the release, render the settlement agreement null, and demand reimbursement from the responsible driver. At the time the

injured party received medical services for which Medicare paid, the tortfeasor was no longer "obligated to pay" for the medical expenses, and thus the government has no right to any reimbursement from the tortfeasor.

Accordingly, the government does not have any claim for reimbursement from any of the defendants after December 2, 2003, well after the *Abernathy* action was settled. *See* Complt. ¶ 22 (as of December 2, 2003, at least "97% of the *Abernathy* Plaintiffs had signed releases").

### C. The Government's Claims Against The Moving Defendants Are Also Barred By The Statute Of Limitations As Measured From The Date Of Their Alleged "Receipt" Of The Proceeds Of The Abernathy Settlement

While the Eleventh Circuit has stated that the statute of limitations under the MSP commences upon the provision of medical services, the government has argued in other cases that the statute does not begin to run until the date a defendant receives the proceeds from the primary payer. *See, e.g., U.S. V. Weinberg*, Civ. Act. No. 01-CV-0679, 2002 U.S. Dist. LEXIS 12289, *16 n.5 (E.D. PA. July 1, 2002) ("The Government contends that the statute of limitations began to run when [the defendant] received the funds in settlement"). Even assuming *arguendo* that statute of limitations commenced on the date of the supposed receipt by the Moving Defendants of settlement proceeds, the government's claims against the Moving Defendants relating to the $275 million

settlement payment in *Abernathy* are nevertheless time barred.[4]

The *Abernathy* Settlement Agreement attached to the Complaint as Exhibit 1 expressly provides that:

> When plaintiffs' counsel have obtained signed Releases from at least 75% of the adult plaintiffs, plaintiffs' counsel shall so certify to the Court and the Interested Parties. Immediately upon such certification, all funds in the Settlement Account … shall be wire transferred to an interest bearing plaintiffs' attorneys' escrow account … designated by plaintiffs' counsel and approved by the Court.

(Complt. Exh. A, ¶ 3(c).) On October 28, 2003, plaintiffs' counsel submitted the required certification, releasing the $275 million from the Court's escrow account to plaintiffs' counsel's escrow account. (A copy of the October 28, 2003 Certification is attached hereto as Exhibit A.) Thus, even assuming *arguendo* that any of the Moving Defendants "received" the $275 million settlement payment, the government was required to file any action seeking reimbursement from those funds by October 28, 2009, *i.e.*, six years after the Moving Defendants are alleged to have "received" the monies. Here, the government waited until December 2, 2009 to commence this action, and thus its claim to any of the $275 million is time barred.

---

[4] None of the Moving Defendants "received" any proceeds of any settlement monies to which the government had any claim to reimbursement. To the extent the government had any claim to any of the *Abernathy* settlement funds, its right was limited to the portion of the personal injury settlement, as to which proceeds none of the Moving Defendants received.

- 13 -

## II.

## THE GOVERNMENT HAS FAILED TO PROPERLY ALLEGE A CAUSE OF ACTION UNDER FED. R. CIV. P. 8

Even assuming *arguendo* that the government had filed a timely action (which it did not), its claims against the Moving Defendants nevertheless must be dismissed because it failed to properly allege a cause of action under Fed. R. Civ. P. 8. Courts have made clear that where the government seeks to recover medical expenses paid on behalf of individuals in an action such as this, it must specifically allege the identity of those individuals on whose behalf it made payments, and the amount of those payments in order to state a claim, even under the very liberal pleading standards of Fed. R. Civ. P. 8.

For example, in *City of Birmingham v. The American Tobacco Co.*, 10 F. Supp. 2d 1257 (N.D. Ala. 1998), the Court dismissed all of the claims of the City of Birmingham against tobacco companies seeking to recover medical expenses that the City paid on behalf of its employees. The Court granted the City leave to amend its complaint, but expressly required that the City allege in the amended complaint, *inter alia*, "the identity of each City employee for whom plaintiff seeks reimbursement of medical costs," "the identity of each hospital, physician, or other medical provider to whom the City made payments in connection with any injury," and "the amount and date of each payment." *Id*. at 1262. *See also Health Care*

*Service Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579, 581 (7th Cir. 2000) (in order to pursue subrogation claim, insurer "must identify the persons to whose claims the insurers are subrogated").

The only exception to this essential pleading requirement is if the government does not know the identification of the individuals and can only ascertain the necessary information through discovery. In *In re Silicone Gel Breast Implants Products Liability Litig.*, 174 F. Supp. 2d 1242 (N.D. Ala. 2001), the government sought to recover monies pursuant to the MSP from defendants who had created a fund to pay medical expenses pursuant to the settlement of a breast implant class action. The district court dismissed the government's MSP claims in their entirety, "[b]ecause the United States has not identified the individual beneficiaries for whom it claims reimbursement" or the "medical items or services it provided." *Id.* at 1251.

The Eleventh Circuit Court of Appeals reversed the district court's holding, finding that "the district court applied too exacting a standard when it found the Government's Complaint fatally deficient for failing to identify each member of the plaintiff class on whose behalf Medicare made a conditional payment." *United States v. Baxter International, Inc.*, 345 F.3d 866, 882 (11th Cir. 2003). The Court did not dispute the general requirement that in a subrogation action, the plaintiff typically must plead the identification of the insured/beneficiary. However, the

Eleventh Circuit found that an exception applied because "the crucial information that the district court here found necessary to complete the Government's Complaint – 'the Medicare beneficiaries who have received benefits from the defendants' – is outside the Government's control." *Id.* The Court noted that the underlying action was a class action, and thus most of the class members who received funds were not identified in the complaint, and that the claim process was subject to a confidentiality procedure that precluded the government from identifying the recipients of the settlement funds. *Id.*

Here, the identity of the plaintiffs in the *Abernathy* action is available to the government through the captions of the *Abernathy* complaints (*see* Cmplt.¶ 6), unlike in *Baxter* which involved a class action in which the individuals were not individually identified. In addition, the Moving Defendants provided the government with extensive information as to the identification of *Abernathy* plaintiffs during the last approximately one year when the Moving Defendants tried to resolve this matter, and provided information concerning settlement amounts paid to those clients who the government claimed might be Medicare recipients. Thus, the government is fully capable of determining whether it made any Medicare payments on behalf of any of the *Abernathy* plaintiffs, for any condition caused by the Monsanto Defendants that was released as part of the *Abernathy* settlement. Nevertheless, during that entire year of discussion, the

government failed to identify even a single *Abernathy* plaintiff who the government claimed it paid Medicare benefits for any condition caused by the Monsanto Defendants' PCB contamination, or the amount of any such payment.

Rather, the government merely alleges that there are "approximately 907 Medicare beneficiaries" (Cmplt.¶ 21) and that the government supposedly "made conditional payments, on behalf of its Medicare beneficiaries, for illnesses and injuries released in the *Abernathy* Settlement." (Cmplt. ¶ 31.) Such conclusory allegations are wholly insufficient under Rule 8, and thus the government's complaint must be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Moving Defendants respectfully request that the Court dismiss the government's claims against them in their entirety.

Dated: February 1, 2010.　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　/s *M. Todd Lowther*
　　　　　　　　　　　　　　　　　　Teresa G. Minor
　　　　　　　　　　　　　　　　　　M. Todd Lowther
　　　　　　　　　　　　　　　　　　BALCH & BINGHAM LLP
　　　　　　　　　　　　　　　　　　1901 Sixth Avenue North (35203)
　　　　　　　　　　　　　　　　　　Post Office Box 306
　　　　　　　　　　　　　　　　　　Birmingham, AL 35201-0306
　　　　　　　　　　　　　　　　　　Telephone: (205) 251-8100
　　　　　　　　　　　　　　　　　　Facsimile: (205) 226-8798
　　　　　　　　　　　　　　　　　　tminor@balch.com
　　　　　　　　　　　　　　　　　　tlowther@balch.com