FILED
2010 Mar-16  AM 08:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| V. ) | CASE NO:  1:09-cv-02423-KOB |
| ) | |
| JAMES J. STRICKER, et. al., ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |

## REPLY BRIEF OF DON BARRETT, THE BARRETT LAW FIRM, PA, CHARLES E. FELL, JR., CHARLES L. CUNNINGHAM, JR AND CUNNIGNHAM & FELL, PLLC. TO THEIR MOTION TO DISMISS

Defendants, **Don Barrett, The Barrett Law Firm, PA, Charles E. Fell, Jr., Charles Cunningham, Jr., and Cunningham & Fell, PLLC** ("Barrett Defendants"), through counsel, file this brief in reply to the United States Opposition to Barrett Defendants' Motion to Dismiss.  In addition to the arguments presented herein, the Barrett Defendants incorporate by reference all arguments proffered in James J. Stricker, Daniel R. Benson, Donald W. Stewart and Kasowitz, Benson, Torres and Friedman LLP's ("Stricker Defendants") Reply Memorandum.

1

### A. The United States' Complaint Was Not Filed Within the Limitations Period.

The United States contends it must have all the details of its claim before the statutory period begins to run. However, The Eleventh Circuit rejected this position in *United States v. Kass*, 740 F.2d 1493 (11th Cir. 1984). In *Kass*, a case that is very similar to this matter, the United States argued its statute did not begin to run until the final administrative decision. *Id.* at 1498. Kass was a doctor who was found to have over utilized Medicare in 1970 and 1971 creating an overbilling that the United States wanted to recover. *Id.* at 1495-97. The process for identifying Kass's overutilization started in 1973 with an initial review by Blue Shield acting on behalf of Medicare. *Id.* As was the process, when Blue Shield's initial review showed utilization levels higher than would be expected, Blue Shield transferred Kass' billing records to the Florida Medical Foundation for review. *Id.* Florida Medical Foundation notified Blue Shield in September 1974 that Kass was over utilizing Medicare. *Id.* Blue Shield performed further investigations from September 1974 until August 1975. *Id.* The final administrative decision was rendered on April 10, 1976. *Id.* at 1498. The United States filed its action for recovery of the overpayments on April 12, 1982. *Id.* at 1496.

The Eleventh Circuit held that the United States' case was not filed within the 6-year statutory time period. The Court found it was not necessary for the relevant officials to have all the details of their claim before the statutory period began to run. Once facts making up the very "essence" of the right of action are **reasonably knowable**, tolling stops and the statutory period begins. *Id.* at 1497. On this basis, the Court held the 6-year statute of limitations "began to run, at the very latest, on September 4, 1974, when Florida Medical Foundation notified Blue Shield of its finding that Kass had 'overutilized' Medicare in 1970 and 1971."[1] *Id.* at 1497-98.

In the present matter, the facts making up the very essence of the United States claim were reasonably knowable, at the very latest, as of August 20, 2003.[2] That is the date the federal court presiding over the United States' case against the Abernathy defendants for environmental cleanup and the state court presiding over the Abernathy Plaintiffs' personal injury case had a joint hearing to discuss the Abernathy Settlement. The Abernathy Settlement Agreement included the

---

[1] The Court noted the "facts making up the 'essence' of the cause may have been reasonably knowable when Blue Shield's well-founded suspicions triggered Blue Shield's sending the records to the Florida Medical Foundation. Id. at 1498, n. 5.

[2] Arguably the facts making up the United States claim were reasonably knowable on March 25, 2002 when the United States filed a companion case in federal court against the Abernathy defendants for the environmental cleanup of the site that was the source of contamination that caused the Abernathy plaintiffs' injuries: *United States v. Pharmacia Corp., et al.*, Civil Action No. 02-CV-0749, United States Federal Court, Northern District of Alabama, Honorable U.W. Clemon presiding. But we need not discuss this issue because in choosing the latest possible date, August 20, 2003, the United States' suit is barred.

representations made on the record at that joint hearing before Judge Clemon who was presiding over the United States case in federal court and Judge Laird who was presiding over the Abernathy plaintiffs' case in state court. Exhibit 1 to the Complaint at ¶ 13. The Settlement Agreement also required the Abernathy plaintiffs to withdraw as amici curiae in the federal court case. Id. at ¶ 11. Given that these two cases were inextricably linked, the facts making up the very "essence" of the United States right of action were **reasonably knowable** at the time of this joint hearing – August 20, 2003. Thus, the United States action, filed on December 1, 2009, is time-barred.

The United States contention that its cause of action was tolled is also misplaced. If any tolling applies, it applies to the time period between when the United States made payments to providers that were later demonstrated to be someone else's primary responsibility and August 20, 2003. In *Kass*, the Eleventh Circuit found the United States cause of action "accrued when the government overpaid Kass [in 1970 and 1971] for claimed Medicare services which were not medically necessary." *Id.* at 1497. Similarly, the United States claim for recovery in the present matter accrued when the United States made payments for medical treatments which were later determined to be the responsibility of a primary payer. Its cause of action was then "tolled" until the essential facts of its cause of action were reasonably knowable.

This application of facts to the limitations and tolling statutes comports with the statutes' purposes. In reviewing the congressional history of the statutes of limitation and tolling, the Eleventh Circuit noted that "one motivation behind enacting a time limit on government-prosecuted civil actions was the desire to inspire diligence in discovering claims." *Id.* As well, "[f]oremost in the enactment of [the tolling statute] was the thought that the government should not be penalized if the fraud of an adverse party restricted its ability to discover a valid cause of action until long after its accrual. *Id.* (citing S.Rep. No. 1328, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Code Cong. & Adm.News, at 2507). There was no fraud in the present matter. These cases were widely covered in newspapers across the country and within the Department of Justice itself. See Exhibit A. The original Abernathy lawsuits were filed in 1996, consolidated in 2002, the United States filed its companion case in 2002, and the Abernathy lawsuits settled in August 2003. At any of these times, the essential facts of United States' cause of action were reasonably knowable. There is simply no excuse for the United States' failure to file suit within the statutory time period. *See, also, Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 865 (10th Cir. 1993) ("[D]istrict courts should not view a failure to exercise reasonable diligence, inconvenience, and even some hardship on the part of government as grounds for tolling the limitations period.").

**B. The Barrett Defendants Motion To Dismiss Should Be Granted Because The MSP Does Not Authorize Recovery from an Entity That No Longer Has Funds from a Primary Payer in Its Possession.**

The Medicare Secondary Payer Act ("MSP") does not permit recovery from an attorney who does not have the primary payer funds in his possession. The MSP treats entities who receive payment from a primary payer, which includes attorneys who represent Medicare beneficiaries, different from primary payers. For example, the MSP permits the United States to recover double damages from a primary payer, but does not permit it to recover double damages from entities that receive payment from a primary payer. MSP provides in pertinent part:

> (iii) Action by United States. In order to recover payment made under this *title [42 USCS §§ 1395* et seq.] for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) **under a primary plan**. The United States may . . . **collect double damages against any such entity**. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity.

42 U.S.C. S 1395y(b)(2)(B)(iii) (emphasis added).

The regulations further highlight this difference. The regulations provide that a primary payer must repay Medicare **even if it has already reimbursed** the

Medicare beneficiary or other person. There is no similar provision for entities who receive payment from a primary payer. 42 C.F.R. 411.24 provides in pertinent part:

> (e) *Recovery from primary payers.* CMS has a direct right of action to recover from any primary payer.
>
> (f) *Recovery from parties that receive primary payments.* CMS has a right of action to recover its payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment.
>
> (h) *Reimbursement to Medicare.* If the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days.
>
> (i) *Special rules.* (1) In the case of liability insurance settlements and disputed claims under employer group health plans, workers' compensation insurance or plan, and no-fault insurance, the following rule applies: **If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.**

42 C.F.R. 411.24 (e), (f), (h) and (i) (emphasis added). "The absence of any similar provision for reimbursement from an attorney who has disbursed proceeds to a client shows that Medicare has no authority to recover from attorneys who no longer have proceeds in their possession." Sally Hart, *The Myth of the Superlien: Medicare Secondary Payer Law Clarified*, NAELA JOURNAL, VOLUME V, 2009, p. 102. Notably, in every case where the United States has sued an attorney under the

MSP Act, the attorney still had the settlement proceeds in escrow. *See, e.g., United States v. Sosnowski*, 822 F.Supp. 570 (W.D. Wis. 1993).

In light of the above, this Court should dismiss the United States claim against the Barrett Defendants. To allow the United States case against the Barrett Defendants to proceed would render the MSP distinctions between primary payers and other entities superfluous. *See Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (hesitating to adopt "an interpretation of a congressional enactment which renders superfluous another portion of that same law."). As proved in their Motion to Dismiss, the Barrett Defendants no longer have payments from a primary payer and thus, the United States does not have a claim against them under the MSP Act.

## CONCLUSION

The United States' claims are barred by the Statute of Limitations. The facts regarding the United States' claims were knowable prior to the trial in the underlying matter. The United States could have intervened in the underlying lawsuit before the trial in the underlying case and contributed to the considerable effort made by the attorneys or helped cover some of the considerable costs of the litigation in the trial of which took over 1 year. The United States could have intervened when the case was settled and asserted a lien when the funds were being held by the State of Alabama. However, the United States did nothing for more

than six years and until after most of the funds have been distributed. For this reason, the United States' claims are barred by the Statute of Limitations.

In addition, if this Court believes that there may be some facts which could possibly support the United States' position regarding the Statute of Limitations, the claims against the Barrett Defendants must still be dismissed. The Barrett Defendants only received funds designated for attorney fees and never held funds in escrow from a primary payer and certainly no longer have payments from a primary payer. The United States' claims, if any, are against the Stricker Defendants and this Court should not waste its' time with the Barrett Defendants.

Respectfully submitted,

*/s/ J. Gusty Yearout*
J. GUSTY YEAROUT
YEAROUT & TRAYLOR, P.C.
3300 Cahaba Road
Suite 300
Birmingham, AL 35223
Telephone: 205.414.8160
Facsimile: 205.414.8199

ATTORNEY FOR DEFENDANTS,
**Don Barrett, The Barrett Law Firm, PA, Charles E. Fell, Jr., Charles Cunningham, Jr, and Cunningham & Fell, PLLC.**

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March, 2010, I electronically filed the foregoing Reply Brief to the Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send an electronic notification of such filing to the following:

Tony West, Assistant Attorney General
Cathy J. Burdett, Esq.
J. Christopher Kohn, Esq.
Ruth A. Harvey, Esq.
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044

John T. McConkie, Esq.
United States Department of Justice
1100 L Street, NW
Washington, DC 20005

Joyce White Vance, Esq., United States Attorney
Richard E. O'Neal, Esq., Assist United States Attorney
United States Attorney's Office for the Northern District of Alabama
1801 4th Avenue North
Birmingham, AL 35203-2101
*Counsel for Plaintiff The United States of America*

Vernon L. Wells, II, Esq.
J.David Moore, Esq.
Kary Bryant Wolfe, Esq.
Walston, Wells & Birchall, LLP
P.O. Box 830642
Birmingham, AL 35283-0642
*Counsel for Defendant Solutia Inc.*

William S. Cox, III, Esq.
Kevin E. Clark, Esq.
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203-3200

J. Mark White, Esq.
Augusta S. Dowd, Esq.
Linda G. Flippo, Esq.
Karen M. Hennecy, Esq.
Andrew C. Allen, Esq.
White Arnold & Dowd, P.C.
2025 3rd Avenue North, Suite
Birmingham, AL  35203
*Counsel for Monsanto Company, AIG and Travelers Companies, Inc.*

Mathew H. Lembke, Esq.
Ty E. Dedmon, Esq.
Andrew L. Brasher, Esq.
Bradley Arant Boult Cummings, LLP
1819 5th Avenue North
Birmingham, AL  35203
Counsel for Monsanto

George P. Ford, Esq.
Ford, Howard & Cornett, P.C.
P.O. Box 388
Gadsden, AL  35902
*Counsel for Greg Cusimano & Cusimano, Keener, Roberts & Raley, P.C.*

Bruce F. Rogers, Esq.
Charles K. Hamilton, Esq.
Bainbridge, Mims, Rogers & Smith, LLP
600 Luckie Drive, Suite 415
P.O. Box 530886
Birmingham, AL  35253
*Counsel for Defendant Johnston Druhan, LLP*

Teresa G. Minor
M. Todd Lowther
Balch & Bingham LLP
1901 Sixth Avenue North
P.O. Box 306
Birmingham, AL  35201
*Counsel for Stricker, Benson, Stewart and Kasowitz Benson*

And I hereby certify that I have mailed by United States Postal Service the document to the following non-CM-ECF participants:

The Cody Law Firm, P.C.
Lorna Oaks Professional Center
3141 Lorna Road, Suite 202
Birmingham, AL  35216

             */s/ J. Gusty Yearout*
             OF COUNSEL