IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| V. ) | CV-09-BE-2423-E |
| ) | |
| JAMES J. STRICKER, et al., ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |

**BRIEF OF DEFENDANTS AMERICAN INTERNATIONAL
GROUP, INC. AND THE TRAVELERS COMPANIES, INC.
IN SUPPORT OF MOTION TO DISMISS COUNTS III AND IV**

Defendants American International Group, Inc. ("AIG") and The Travelers Companies, Inc.[1] ("Travelers") (collectively, "Movants") submit the following brief in support of their Motion to Dismiss Counts III and IV of the Complaint.

## INTRODUCTION

The United States of America (the "Government") has brought this action under the Medicare Secondary Payer Act (the "MSP Act"), 42 U.S.C. § 1395y(b)(2) (2004) *et seq.*, seeking reimbursement for payments the Government allegedly made for the healthcare of roughly 907 Medicare beneficiaries. The action arises out of the settlement of a number of state court lawsuits (collectively,

---

[1] Plaintiff named "Travelers Companies, Inc. d/b/a The Travelers Indemnity Company" as the defendant. No such company exists. Further, as explained below, even "The Travelers Companies, Inc." is not a proper party to this suit.

the "Abernathy litigation") filed more than a decade ago against Solutia Inc. ("Solutia"), Monsanto Company ("Monsanto"), and Pharmacia Corporation ("Pharmacia") (collectively, the "Abernathy defendants"). The Abernathy litigation sought damages for environmental harm allegedly caused by the release of polychlorinated biphenyls ("PCBs") at an industrial facility in Anniston, Alabama. It involved thousands of plaintiffs, whose claims eventually were resolved by a settlement agreement executed on September 9, 2003 (the "Abernathy Settlement"), pursuant to which the Abernathy defendants agreed to pay a total of $300 million into various settlement funds (collectively, the "Abernathy Settlement Fund").

More than six years later, the Government brought this action, claiming that it is entitled to reimbursement from various entities for unidentified sums the Government allegedly paid in Medicare benefits, in connection with unspecified medical services provided "upon information and belief" to one or more of the approximately 907 unnamed Abernathy plaintiffs. With respect to Movants, the Government alleges that the Abernathy Settlement required them to make payments from product liability insurance policies that Solutia purportedly purchased from them. *See* Compl. ¶¶ 41-45. Therefore, the Government claims, they paid into the Abernathy Settlement Fund under a "primary plan" (within the meaning of the MSP Act). *Id.*

2

The Complaint should be dismissed as to Movants. As an initial matter, neither AIG nor Travelers is a proper party to this action as they are holding companies, not insurance companies, and paid no monies to anyone, pursuant to insurance policies or otherwise. Further, Counts III and IV of the Complaint should be dismissed because they are time-barred by the applicable statute of limitations, and because the Complaint lacks sufficient factual allegations to state a plausible claim under the MSP Act.

## ARGUMENT

## I.   THE GOVERNMENT HAS NAMED THE WRONG PARTIES.

The Complaint names American International Group, Inc. and Travelers Companies, Inc. d/b/a The Travelers Indemnity Company as defendants, but neither company is a proper party to this action. The Government asserts that the Movants are liable under the MSP Act because they allegedly made payments to the Abernathy Settlement Fund pursuant to insurance policies they issued to Solutia. Compl. ¶¶ 41-45. But neither party can be liable under the MSP Act because neither party could have issued any insurance policies to Solutia and neither party could have made any payments to the Abernathy Settlement Fund pursuant to any insurance policy.

Neither AIG nor Travelers is authorized to transact the sale of, write, or issue primary or excess insurance policies, either on their own account or for any

3

other insurer. American International Group, Inc. is a holding company, not an insurance company. *See* 2009 Form 10-K at Part I, http://www.sec.gov/Archives/edgar/data/5272/000104746910001465/a2196553z10-k.htm (attached hereto as Exhibit "A").[2] Similarly, The Travelers Companies, Inc. (notably, not "Travelers Companies, Inc. d/b/a The Travelers Indemnity Company") is a holding company, not an insurance company. *See* 2009 Form 10-K at Part I, http://www.sec.gov/Archives/edgar/data/86312/000104746910000972/a2196528z10-k.htm (attached hereto as Exhibit "B"). As holding companies, neither AIG nor Travelers sells, writes, or issues insurance policies. Therefore, neither AIG nor Travelers sold, wrote, or issued any policy to Solutia. Furthermore, as holding companies, neither AIG nor Travelers adjusts claims under insurance policies or makes any payments to insureds or claimants for the settlement of any claims made under any insurance policy. Accordingly, neither AIG nor Travelers made any payments to Solutia or the Abernathy Settlement Fund, or otherwise had any financial obligations to any other party that arose out of or otherwise pertained to any insurance policy allegedly issued to Solutia.[3]

---

[2] The court may take judicial notice of public records in deciding a motion to dismiss. *Universal Express, Inc. v. SEC*, 177 Fed. Appx. 52, 53 (11th Cir. 2006).

[3] Although Movants have provided the Government with the names of their direct or indirect insurance company subsidiaries that made certain payments to Monsanto and/or Solutia following Monsanto's and Solutia's participation in the Abernathy Settlement, the Government has not taken steps to substitute those subsidiaries for Movants.

4

Consequently, AIG and Travelers are not the proper parties to this action. Counts III and IV of the Complaint, which name only them, should therefore be dismissed.

## II. COUNTS III AND IV ARE BARRED BY THE STATUTE OF LIMITATIONS.

Because the MSP Act does not contain its own statute of limitations, the general statute of limitations applicable to governmental actions – 28 U.S.C. § 2415 – applies to the causes of action asserted in the Complaint against AIG and Travelers. Section 2415 contains both a three-year and six-year statute of limitations, and the Government's claims against Movants are untimely under either period, as set forth in the motions to dismiss and supporting briefs submitted by Monsanto, Solutia, and Pharmacia (Doc Nos. 32, 36, 58, 60, and 61), which Movants endorse and fully incorporate by reference.

The Government bases its claims against AIG and Travelers on their alleged obligations to make contributions to the Abernathy Settlement Fund. According to the Government (Compl. ¶ 42), these alleged payment obligations arose no later than the date on which the settlement agreement was executed in the Abernathy litigation – September 9, 2003 – and consequently, the Government's claims accrued as of that date.[4] Because September 9, 2003 is more than six years prior to

---

[4] It is assumed, solely for purposes of this Rule 12 motion, that Movants had some obligation or responsibility under the MSP Act, as the Government alleges. Movants do not agree that they

5

December 2, 2009, the date on which the Government filed its Complaint in this case, the Government's claims against AIG and Travelers are untimely under either the three-year or six-year limitations period in 28 U.S.C. § 2415.

The Government's claims are brought under the MSP Act, pursuant to which Medicare may make "conditional payments" for a beneficiary's healthcare costs, and then later seek reimbursement from appropriate responsible parties. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 875 (11th Cir. 2003) (citations omitted). The Government may seek reimbursement of its conditional payments by bringing an action "against any or all entities that *are or were required or responsible . . .* to make payment with respect to the same item or service (or any portion thereof) under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii) (emphasis added). The "primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release . . . of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii);[5] *see Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1309-10

---

had any obligation or responsibility under the MSP Act, however, and reserve all rights to make additional substantive arguments as to why they cannot be held liable to the Government on these claims.

[5] Much of the language in 42 U.S.C. § 1395y(b)(2)(B) was added to the MSP Act in December 2003, *after* the Abernathy Settlement was negotiated and executed. Movants reserve the right to argue that it cannot be applied retroactively to this matter. This is, however, an issue that need not be addressed by the Court in the context of this motion to dismiss; for purposes of the motion to dismiss, Movants will assume that the provision applies.

(11th Cir. 2006) ("After the Medicare beneficiary obtains a favorable judgment or settlement of state tort claims, Medicare is entitled to reimbursement to the extent of its conditional payments.").

As noted in *Whittle v. Local 641*, 56 F.3d 487, 489 (3d Cir. 1995), cited by the Government, "[f]or limitation of actions, a cause accrues when it is sufficiently ripe that one can maintain suit on it."  56 F.3d at 489.  The Government thus need not have *all* of the details supporting its claim, but once it has the facts making up the "*very essence* of the right of action," the limitations period begins to run. *United States v. Kass*, 740 F.2d 1493, 1498 (11th Cir. 1984) (emphasis added).

Here, the Government alleges that its right to reimbursement from Movants arises out of the terms of the Abernathy Settlement:

> The terms of the <u>Abernathy</u> Settlement rendered these defendants required or responsible to pay under a primary plan, and those payments into the <u>Abernathy</u> Settlement Fund constituted payments under a "primary plan" that entitled the United States to reimbursement for Medicare conditional payments made on behalf of Medicare beneficiaries participating in the <u>Abernathy</u> settlement.

Compl. ¶ 42.  Thus, under the Government's own theory, the "very essence" of the Government's cause of action against Movants was present, at the very latest, when the Abernathy Settlement was executed.  The Government's reimbursement claim was, therefore, "sufficiently ripe" to accrue on September 9, 2003.  Compl., Ex. 1 at 20.  The Government did not file its Complaint until December 2009, which was within neither three nor six years of the date its claims accrued.

The Government contends that its cause of action did not accrue until December 2, 2003, the date on which Abernathy plaintiffs' counsel filed a certification confirming that 97% of the Abernathy plaintiffs had signed releases. Doc. No. 55, Gov't Resp. at 32.[6] But this fact is irrelevant to the accrual of the Government's claims for two separate reasons. First, the Abernathy Settlement would not have been rendered unenforceable even if the 97% certification had not been obtained. Paragraph 5.b. of the Settlement Agreement only gave the settling defendants the option to declare the Settlement Agreement null and void if the 97% certification had not been obtained within the time allowed by the settlement agreement; it did not automatically render it null and void. Thus, unless and until the settling defendants actually exercised their rights under paragraph 5.b. and declared the Settlement Agreement null and void, the obligations set forth in the agreement remained in effect as of September 9, 2003. *See* Pharmacia's reply brief, Doc. No. 58 at 7.

Second, regardless of the 97% certification, the Government itself has alleged that Movants' "responsibility" to pay, which would trigger the MSP causes

---

[6] The Government suggests that "although December 2, 2003 was the earliest point at which the statute of limitations could begin to accrue, in reality, it likely did not accrue until much later due to the federal tolling statute." Doc. No. 55, Gov't Resp. at 33. In the Eleventh Circuit, however, "once the facts making up the 'very essence of the right of action' are reasonably knowable, the § 2416 bar is dropped." *Kass*, 740 F.2d at 1497; *see also* Pharmacia's reply brief, Doc. No. 58 at 9-10 (elaborating on this point and fully incorporated here by reference). The Government has offered no facts to support its summary conclusion that it "could not have known" before December 2, 2003, that it had a claim.

8

of action, occurred much earlier than December 2, 2003, *i.e.*, at the time of the Abernathy Settlement in September 2003.  *See* Compl. ¶ 42; 42 U.S.C. § 1395y(b)(2)(B)(ii) (obligation to reimburse arises by virtue of having a "responsibility to make payment"); 42 C.F.R. § 411.22(b)(3) (responsibility to make payment may be demonstrated by "a settlement").  The Government cites no authority supporting the proposition that accrual of a cause of action for reimbursement is stalled until conditional releases are obtained subsequent to a payment or payment obligation.  In fact, the Government's proposition is directly contrary to the express language of the MSP Act.  The MSP Act explicitly provides that responsibility to make payment may be demonstrated even if the promise to pay (or an actual payment) is conditioned upon a compromise or release of claims that is to be received later.  42 U.S.C. § 1395y(b)(2)(B)(ii) (responsibility "may be demonstrated by . . . a payment conditioned upon . . . compromise . . . or release"). Conditioning payment upon receipt of a release is an act that can (and in this case did) occur prior to the date of receipt of the release.  In other words, as the Government alleged in paragraph 42 of the Complaint, Movants' alleged "responsibility" arose in September 2003 when the Abernathy settlement agreement was signed, not when the releases were later provided.

  Because the Government's claims accrued more than six years before the Complaint was filed, the Court need not reach the issue of whether the three-year

or the six-year limitations period should apply here – the Complaint is untimely in either case. That said, it is the three-year period that is applicable, and thus, even if the claims had not accrued until much later, the Government would still be well out of time. The three-year period governs because the Government's claims arise not out of any contractual obligation owed by Movants to the Government, but rather out of alleged tort claims (for exposure to contaminants) that were settled between private parties. Because it was a tort that gave rise to the settlement triggering the reimbursement responsibility alleged by the Government, the claims would be timely only if they accrued within the three years preceding the filing of the Complaint in December 2009. (Monsanto's briefs, which discuss this in detail, are fully incorporated here by reference.) There is absolutely no argument – and the Government has made none – that the claims accrued so late.[7]

## III. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM AGAINST MOVANTS.

Movants also hereby join and adopt the arguments made in the briefs supporting Solutia's motion to dismiss on the grounds that the Complaint fails to state a plausible claim against Solutia. Those arguments apply equally to the

---

[7] For this purpose, notably, no one (not even the Government) disputes that the Government knew it had the instant reimbursement claim by at least November 29, 2004, when it filed a proof of claim in Solutia's bankruptcy case seeking the identical relief sought here. *See* Monsanto Br. at 5. And this date precedes the filing of the Complaint by significantly more than three years.

claims against Movants, and accordingly, Counts III and IV should also be dismissed for this reason.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id.* But the complaint must include "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* Here, the Government's Complaint contains no factual allegations as to what services Medicare paid for or for whom, or how those services are linked, if at all, to any specific services the Abernathy Settlement purportedly covered. Nor does the Complaint allege that Movants knew or should have known that their alleged payments covered services allegedly paid for by Medicare. These omissions render the Complaint deficient under *Iqbal* and *Twombly*.

    **A.**    **The Complaint Is Legally Deficient Because It Lacks Factual Allegations Concerning the Services Allegedly Covered by Both the Abernathy Settlement Funds and Medicare.**

Medicare has a right to reimbursement of payments "with respect to an item or service if it is demonstrated that [a] primary plan has or had a responsibility to

make payment *with respect to such item or service.*" 42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added).[8] As stated in *Baxter*, 345 F.3d at 875, "Medicare is empowered to recoup from the rightful primary payer . . . if Medicare pays for a service that was, or should have been, covered by the primary payer." The first step, in other words, is for the Government to establish that Movants had an obligation to pay *the same* medical expenses that were conditionally paid by Medicare. And the burden of establishing this link is on the Government. *United States v. Weinberg*, No. Civ.A. 01-CV-0679, 2002 WL 32356399, at *6 (E.D. Pa. July 1, 2002) (Medicare may not seek reimbursement from defendant unless it meets burden of demonstrating that a medical stroke for which Medicare made conditional payments was causally related to a prior automobile accident for which defendant received settlement payments). Here, even assuming for purposes of argument that Movants "paid into the Abernathy Settlement Fund," Compl. ¶ 42 (neither they nor their subsidiaries actually in fact having done so), the Complaint does not adequately allege the requisite nexus, *i.e.*, that the Abernathy Settlement covered any of the same medical expenses allegedly paid by the Government, or

---

[8] The quoted language was also added in 2003, *see* n.5 *supra*, which Movants reserve the right to argue does not apply.

that Movants paid any amounts that covered the same medical expenses allegedly paid by the Government.[9]

The Government normally "conduct[s] an extensive examination of the beneficiary's claims history to determine the amount expended by [Medicare] on health care *specifically related to the injury at the heart of the settlement*." *In re Zyprexa Products Liability Litig.*, 451 F. Supp. 2d 458, 463 (E.D.N.Y. 2006) (emphasis added); *see also Baxter*, 345 F.3d at 874 (Government entered into tolling agreements for five years while negotiating for information with which to determine whether class members received health benefits for which reimbursement was due). Here, however, in a rush to get an already untimely complaint on file, the Government did not take these steps. Instead, the Government urges that it has no obligation to show any connection between the payments it has allegedly made on behalf of unidentified beneficiaries, and the amounts paid into the Abernathy Settlement Fund. According to the Government, it is sufficient that the Complaint alleges that the Abernathy Settlement encompassed medical claims, and that it alleges that Medicare "made conditional payments on behalf of its beneficiaries, for illnesses and injuries released in the Abernathy Settlement." Doc. No. 55, Gov't Resp. at 8-9. These are precisely the

---

[9] This is not just a matter of the Government having failed to plead properly; the omission goes to the heart of the Government's claim, *i.e.*, whether any claim *can* be pled. Movants submit that it cannot.

kind of conclusory allegations condemned by the Supreme Court in *Twombly* and *Iqbal*.

The Abernathy Settlement encompassed medical claims in only the most general sense; most of the settlement dollars were specifically allocated to property damage and attorneys fees.  *See* Compl. Ex. 1.  Nowhere in the settlement agreement, or elsewhere, is there any reference to any particular medical condition, treatment, or service that is being compensated by the settlement payments, nor does the Complaint allege any particular medical condition, treatment, or service that was purportedly covered by the settlement payments.  Indeed, the Complaint does not even allege that any particular medical condition or treatment resulted from or was necessitated by exposure to PCBs.

Coupled with the complete dearth of factual allegations regarding the medical conditions or treatments supposedly covered by the Abernathy Settlement is an identical dearth of factual allegations regarding the medical conditions or treatments for which Medicare purportedly paid.  The Complaint is also devoid of any identification of the specific beneficiaries who purportedly suffered the medical conditions and received the treatments for which Medicare allegedly paid.  Indeed, it does not even identify the amount of conditional payments allegedly made.  In fact, relying solely on the allegations set forth in the Complaint, the conditional Medicare payments for which the Government seeks reimbursement

could have been for broken bones resulting from an automobile accident, or for hospital expenses occasioned by an appendectomy, having absolutely nothing to do with the Anniston PCB exposure.

There are absolutely no facts in the Complaint that link payments made by Medicare to any alleged medical condition or treatment released by the Abernathy Settlement or to any amounts paid by Movants. The absence of these facts is fatal to the Government's claims; without specific factual allegations supporting a nexus between the Medicare payments and the payments covered by the Abernathy Settlement, the Government has utterly failed to state a legally sufficient claim. The rote and conclusory allegations of the Complaint are so general that they could be inserted in virtually any complaint concerning any settlement of environmental liabilities.

The *only* paragraph in the Complaint that purports to link the payments made by Medicare to any alleged medical condition or treatment released by the Abernathy Settlement states in conclusory fashion that "[t]he United States, through CMS, as the administrator of the Medicare program, made conditional payments, on behalf of its Medicare beneficiaries, for illnesses and injuries released in the Abernathy Settlement." Compl. ¶ 31. Under *Iqbal* and *Twombly*, that is precisely the kind of summary assertion that cannot support the plausibility requirement. That is particularly so in the context of the Abernathy Settlement,

15

which, as noted above, nowhere describes the physical injuries, if any, that the claimants allegedly suffered, released, or for which they received compensation as part of the settlement.

> **B.   The Complaint Is Legally Deficient Because It Lacks Factual Allegations Concerning Movants' Knowledge of Conditional Medicare Payments.**

The Complaint is also devoid of any factual allegations concerning whether Movants knew that Medicare had made conditional payments for the same medical conditions, treatments, and beneficiaries purportedly covered by the Abernathy Settlement for which reimbursement was required. Actual or constructive knowledge is another required element of the Government's claim for reimbursement. *See Baxter*, 345 F.3d at 900, 903 n.34. Here, the only allegation made with respect to Movants' knowledge is, once again, so general and conclusory that it could be stated in any complaint:

> Travelers and AIG knew or should have known that one or more Abernathy Plaintiffs were Medicare beneficiaries on whose behalf the United States was entitled to recover to the extent of any Medicare conditional payments made.

Compl. ¶ 44. No supporting facts are pled as to when or how Movants should have gained this knowledge.[10]

---

[10] A more detailed discussion of this element appears in Solutia's briefs in support of its motion to dismiss, which are incorporated here by reference.

Equally important, the Government alleges only that Movants knew or should have known that one or more of the Abernathy plaintiffs were Medicare beneficiaries, *not* that Movants knew or should have known that Medicare had made conditional payment for the same items or services covered by the Abernathy Settlement, as *Baxter* requires.  *See Baxter*, 345 F.3d at 901 (requiring allegations that defendants had actual or constructive knowledge that the recipients of the funds designated for breast implant-related treatments had already received breast implant-related treatment for which Medicare paid).

Absent factual allegations that would, if proven, establish a link between the Abernathy Settlement and Medicare paid-for services, of which Movants had knowledge, the Complaint simply fails to state a plausible claim.

## CONCLUSION

For the above reasons and all of those discussed in the briefs filed by Monsanto, Solutia, and Pharmacia, Counts III and IV of the Complaint should be dismissed.

DATED:  May 5, 2010

>Respectfully submitted,
>
>/S/ *Augusta S. Dowd*
>Augusta S. Dowd (ASB-5274-D58A)
>One of the Attorneys for The Travelers
>Companies, Inc. and American International
>Group, Inc.

**OF COUNSEL**:

J. Mark White
Augusta S. Dowd
WHITE ARNOLD & DOWD P.C.
2025 Third Avenue North, Suite 500
Birmingham, Alabama 35203
Tel: (205) 323-1888
Fax: (205) 323-8907
E-mail: adowd@whitearnolddowd.com


/S/  *Carol Connor Cohen*
One of the Attorneys for American
International Group, Inc.

Application for *Pro Hac Vice* Pending

**OF COUNSEL:**

Carol Connor Cohen
Donald H. Romano
Caroline Turner English
Lindsay S.C. Brinton
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC  20036-5339
Tel:  (202) 857-6000
Fax:  (202) 857-6395

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of May, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tony West, Esq.
Joyce White Vance, Esq.
Richard E. O'Neal, Esq.
J. Christopher Kohn, Esq.
Cathy J. Burdett, Esq.
Ruth A. Harvey, Esq.
U.S. Department of Justice
Civil Division
P. O. Box 875
Ben Franklin Station
Washington, D.C. 20044

Vernon L. Wells, II, Esq.
J. David Moore, Esq.
Kary B. Wolfe, Esq.
Walston, Wells & Birchall, LLP
P. O. Box 830642
Birmingham, AL 35283

William S. Cox, Esq.
Keven E. Clark, Esq.
Wesley B. Gilchrist, Esq.
Lightfoot, Franklin & White, LLC
The Clark Building
400 North 20th Street
Birmingham, AL 35203

George P. Ford, Esq.
Ford, Howard & Cornett, PC
P. O. Box 388
Gadsden, AL 35902

Matthew H. Lembke, Esq.
Ty E. Dedmon, Esq.
Andrew L. Brasher, Esq.
Bradley Arant Boult Cummings, LLP
1819 5th Avenue North
Birmingham, AL 35203

Charles K. Hamilton, Esq.
Bruce F. Rogers, Esq.
Bainbridge, Mims, Rogers & Smith, L.L.P.
Suite 415 – The Luckie Building
600 Luckie Drive
P. O. Box 530996
Birmingham, AL 35253

J. Gusty Yearout, Esq.
Yearout & Traylor
3300 Cahaba Road, Suite 300
Birmingham, AL 35223

John T. McConkie, Esq.
P. O. Box 875
Ben Franklin Station
Washington, D.C. 20044

M. Todd Lowther, Esq.
Teresa G. Minor, Esq.
Balch & Bingham LLP
1901 Sixth Avenue North
Birmingham, AL 35203

/s/ *Augusta S. Dowd*
OF COUNSEL